246 Or. App. 649
267 P.3d 176.
TYRONE CRUZE, SR. and JACQUELINE CRUZE, Trustees of The Tyrone Cruze, Sr. and Jacqueline Cruze Family Trust Agreement Dated March 6, 1987; and CALIFORNIA NATIONAL BANK CUSTODIAN FBO TYRONE CRUZE IRA ACCT CCT0300 AND CUSTODIAN FBO JACQUELINE CRUZE IRA ACCT CCJ0150, Plaintiffs-Appellants,
v.
MARTIN L. HUDLER, an individual; and CHARLES R. MARKLEY, an individual, Defendants-Respondents, and
COVENANT PARTNERS, LLC, a Nevada limited liability company, Defendant.
No. A145179.
Court of Appeals of Oregon.
On respondent Charles R. Markley's petition for reconsideration filed December 6, 2011.
and appellants' response to petition for reconsideration filed December 13, 2011.
Opinion filed November 23, 2011.
Filed: February 15, 2012.
Jeffrey W. Hansen, Joseph A. Rohner IV, and Smith, Freed & Eberhard, P.C., for petition.
Steven L. Naito, and Tarlow Naito & Summers, LLP, for response.
Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Wollheim, Judge.
SCHUMAN, P. J.
Reconsideration allowed; former opinion modified and adhered to as modified.
SCHUMAN, P. J.
Defendant Markley petitions us to reconsider our decision in Cruze v. Hudler, 246 Or App 649, 267 P3d 176 (2011), in which we reversed the trial court's grant of summary judgment in his favor. The majority of his petition either mischaracterizes aspects of our opinion or simply reargues issues that were raised in the briefs and decided adversely to him, and we decline to reconsider those issues. ORAP 6.25(1)(e) (petitions for reconsideration "addressing legal issues already argued in the parties' briefs and addressed by the Court of Appeals are disfavored"). We allow the petition, however, to address two contentions.
First, defendant argues that he "submitted substantial briefing on the legal question of whether [plaintiffs] had the right to rely, which is an essential element of common-law fraud," and that this court "did not consider these arguments in its ruling." Suffice it to say that, in reversing the grant of summary judgment on plaintiffs' fraud claim, we considered and rejected without discussion defendant's argument regarding plaintiffs' right to rely on the alleged misrepresentation. We now make explicit that implicit aspect of our decision.
Second, defendant contends that we stated a fact in the opinion that is not supported by evidence in the summary judgment recordnamely, that, "[w]hile at plaintiffs' home, Hudler spoke with Markley by phone and made changes to the operating agreement." Cruze, 246 Or App at 653. According to defendant, Tyrone Cruze actually testified that he was "assuming" that Hudler communicated with Markley, but did not in fact know whether he was on the phone with Markley or had communicated at all with him while at the Cruzes' home.
In any event, that particular factwhether Hudler and Markley had continued to communicate about the Covenant Agreement while at the Cruzes' home was not material to our analysis. The relevant facts, as we explained in our analysis of the fraud claim, were "that Markley directly or indirectly owned or managed Bridgeport, Covenant, and various other entities with Hudler; that Markley had actual knowledge that Hudler was stealing from people in order to keep their joint business ventures afloat; and that Markley drafted an agreement that contained a material misrepresentation at the same time that Covenant was coming under pressure to repay its obligations * * *." Id. at 659. Based on those facts, we held:
"[A] reasonable trier of fact could find that Markley knew that his various ventures with Hudler were in dire need of cash; that he prepared the draft of the Covenant Agreement knowing that it was part of an ongoing scheme to keep their businesses afloat; and that he participated in the scheme by preparing the agreement with reckless disregard of the falsity of the representation in the hopes that plaintiffs would agree to invest in Covenant."
Id. at 659-60.
There was evidence in the summary judgment record that Markley drafted the Covenant Agreement that was subsequently finalized at the Cruzes' home, and that Markley's draft contained essentially the same misrepresentation in Section 2.1.2 that appeared in the finalized draft. Id. at 660 n 2. Regardless of whether Markley and Hudler subsequently communicated at the Cruzes' home while the agreement was finalized, a reasonable factfinder could infer from Markley's involvement that he "participated in the scheme by preparing the agreement with reckless disregard of the falsity of the representation in the hopes that plaintiffs would agree to invest in Covenant." Id. at 660.
Because it was not material to our analysis, we need not resolve on reconsideration what inferences can be drawn from the summary judgment record about whether and how Markley communicated with Hudler while the agreement was being finalized at the Cruzes' home. Instead, to avoid misstating the evidence in the summary judgment record, we simply delete the sentence in question[1] and adhere to the opinion as modified.
Reconsideration allowed; former opinion modified and adhered to as modified.
NOTES
[1] That sentence, once again, is as follows: "While at plaintiffs' home, Hudler spoke with Markley by phone and made changes to the operating agreement." 246 Or App at 653.